UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERESA J. TODD, individually and on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 3:07-0788 |
| | ) Class Action |
| v. | ) |
| | ) JUDGE ECHOLS |
| RETAIL CONCEPTS, INC., | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM

Pending before the Court are Plaintiff Teresa J. Todd's Motion For Final Approval Of Proposed Class Action Settlement (Docket Entry No. 64) and Plaintiff's Motion For Award Of Attorney's Fees And Expenses And Payment Of Plaintiff Incentive Award (Docket Entry No. 65). Defendant Retail Concepts, Inc. ("Retail Concepts"), did not file any opposition to these motions, having previously joined Plaintiff in executing the Settlement Agreement and moving for its preliminary approval. The Court received a letter dated May 29, 2008 from the Texas Attorney General's Office objecting to the Settlement Agreement. (Docket Entry No. 63).

The Court held a Fairness Hearing on August 1, 2008. At that time the Court heard arguments made by counsel for the parties, as well as argument made by Jeff M. Graham on behalf of the Texas Attorney General's Office. No class member appeared in support of, or in opposition to, the Settlement Agreement.

## I. THE LITIGATION AND SETTLEMENT

### A. Background of the case

Plaintiff Teresa J. Todd filed the instant action on July 30, 2007 against Retail Concepts, Inc., doing business as Sun & Ski Sports. Retail Concepts sells a variety of sport equipment, clothing, and accessories in retail stores located in ten states, including one store in Nashville, Tennessee. On behalf of herself and other putative class members, Plaintiff alleged that Retail Concepts willfully violated the Fair and Accurate Credit Transaction Act, 15 U.S.C. § 1681 *et seq.* ("FACTA") by printing on electronic receipts made at the point of sale or transaction the expiration dates of customers' credit cards and debit cards. Specifically, Plaintiff alleged that Retail Concepts violated 15 U.S.C. § 1681c(g)(1) which provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

The potential civil penalties for willful noncompliance with § 1681c(g) are set forth in 15 U.S.C. § 1681n(a), which provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> * * *
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Plaintiff did not allege in her Complaint that she or any member of the purported class suffered

2

identity theft or experienced other injury as a result of Retail Concepts' failure to comply with FACTA.

During the exchange of written discovery in the case, Retail Concepts acknowledged that, after December 4, 2006, the date when all retailers were required to be FACTA-compliant, it printed the expiration date of its customers' credit and debit cards on approximately 335,736 receipts issued in states other than New York, where Retail Concepts was FACTA-compliant. Retail Concepts also agreed that, from December 4, 2006 until the time all Retail Concepts stores became FACTA-compliant, the average sales price at its stores was approximately $125.00 per transaction. (Docket Entry No. 64-2, Stanley Aff. ¶ 4.)

Counsel took the depositions of Plaintiff and the Rule 30(b)(6) corporate designee for Retail Concepts. Thereafter, Plaintiff filed a Motion for Class Certification, and Retail Concepts filed its opposition to the motion. Following briefing on the class certification motion, the parties agreed to mediate the case before Tracy Shaw of Howell & Fisher, PLLC. After a full day of mediation, the parties reached an agreement to settle the claims in dispute on a class basis. The parties executed a Class Action Settlement Agreement on March 27, 2008, (Docket Entry No. 54-1), and the Court entered an Order Of Preliminary Approval of Settlement on April 25, 2008. (Docket Entry No. 59.)

**B. Terms of the Class Action Settlement Agreement**

Under the Class Action Settlement Agreement, the relief negotiated by the parties includes an agreement by Retail Concepts to offer customers discount coupons for a discount of $15.00 off the customer's next purchase of $125.00 or more and such coupons will be made available for a period of approximately six (6) months or until 335,000 discount coupons have been distributed, whichever occurs first. The number of discount coupons shall not exceed 335,000, and all discount

3

coupons will expire and become void on December 31, 2008. Retail Concepts will not have any obligation to distribute discount coupons until after the Effective Date, which is defined in section 1.3 of the Settlement Agreement and, in no event shall Retail Concepts be obligated to distribute or honor the discount coupons for a period exceeding six (6) months. Retail Concepts' stores rely on repeat customers due to the specialized nature of the merchandise offered. (Stanley Aff. ¶ 10.)

Further, Retail Concepts agreed to pay Teresa Todd as class representative an incentive payment of $3,000.00. Retail Concepts also agreed not to oppose Plaintiff's request for, and to pay Plaintiff, attorney's fees in an amount not to exceed $120,000.00 within fifteen (15) days after the Effective Date. The Settlement Agreement also provides in section 5.1: "Provided that no material modifications (which include modifications with more than a *de minimis* effect on the cost to Retail Concepts of performing its obligations under this Settlement Agreement) are made to the Settlement Agreement or its exhibits, Retail Concepts agrees not to appeal any approval of fees that does not exceed $120,000.00."

The Settlement Agreement expressly addresses in section 5.2 "Litigation Expenses and Reimbursements." That paragraph provides: "Litigation Class Counsel and Retail Concepts agree to bear their own respective Litigation expenses and shall not seek any such expenses or Litigation-related reimbursements from the Court."

### C. Notice provided to potential class members

The Court approved the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") form and the manner in which the Notice was to be given to Settlement Class members. Notice was sent out in three ways, via: (1) Retail Concepts' internet homepage; (2) one in-store posting at or near the cash register in each of Retail Concepts' stores; and (3) one email to all

4

customers for which Retail Concepts has email addresses.

The court-approved Notice has been available to customers through a link on Retail Concepts' homepage, www.sunandski.com, since May 5, 2008, and the link will remain active on the website until December 31, 2008. (Stanley Aff. ¶¶ 5-7.) Retail Concepts placed the Notice at the checkout cash registers in each of its stores around the country (except its New York store) beginning on or around May 5, 2008, and these Notices will remain posted until December 31, 2008. Finally, on May 5, 2008, Retail Concepts sent a mass email to its entire customer list, which includes over 115,000 customers. (Id. ¶¶ 8-9.) Retail Concepts represents that the email stated: "Please click here to find notice of FACTA Class Action Litigation Settlement," and the link takes the consumer to the Notice form. Although these latter facts are not included in Mr. Stanley's affidavit, the Court accepts as true the representations of counsel made in the brief.

**D. The response to the Notice**

No members of the Settlement Class contacted the parties or the Court to make objection to the Settlement Agreement. Also, there have been no requests for exclusion from the Settlement Class.

The Attorney General of Texas, appearing through Mr. Jeff Graham, Assistant Attorney General, filed a letter dated May 29, 2008 (Docket Entry No. 63) asking the Court to disapprove the proposed settlement on the ground that the Settlement Agreement "merely offers coupons of little or no value to the affected class and should therefore not be given judicial approval." Relying on the Class Action Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.*[2], Mr. Graham argued in his letter

---

[2]Section 1712(e) reads:

JUDICIAL SCRUTINY OF COUPON SETTLEMENTS.–In a proposed settlement under which class members would be awarded coupons, the court may approve the

5

and at the Fairness Hearing that offering coupons to consumers for future purchases does not adequately compensate the class. First, it rewards the entity accused of improper actions with additional sales. Second, it gives little of value to the injured Class Members, while at the same time rewarding Class Counsel with attorney's fees paid in cash. In this case, each Class Member will receive a coupon worth $15.00, useable only if the Class Member spends an additional $125.00 or more at the store accused of the improper actions; yet, Class Counsel stand to gain as much as $120,000.00 in cash for attorney's fees. Noting that "coupons are not as good as cash[,]" Mr. Graham contends that Class Members do not deserve a settlement that is categorically inferior to that which Class Counsel agreed to for themselves.

In conjunction with Mr. Graham's remarks, the Court has examined Exhibit E to Notice of Settlement of Class Action (Docket Entry No. 61-5), which lists each store location for Retail Concepts that was not FACTA-compliant and the percentage of total sales volume generated by each store location in the period December 2006 to August 2007. Of the eighteen (18) stores listed, eight (8) of them are located in Texas and the Texas stores accounted for 47.8% of the total sales volume at issue. By contrast, only one of Retail Concepts' stores is located in Tennessee, and that store accounted for 5.7% of the total sales volume. Thus, because there are more potential customers in Texas who may be affected by this Settlement Agreement than there are similar consumers in Tennessee, the Court gives careful consideration to Mr. Graham's objection to the Settlement

---

proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.

Agreement. As will be discussed in more detail below, however, the Court finds that the objections of the State of Texas should be overruled and the Settlement Agreement approved.

**E. Subsequent change in law**

On June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 became law. The Act retroactively amends 15 U.S.C. § 1681n by adding subsection (d) which provides:

> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004 and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

The effect of this retroactive statute is to undercut completely the merits of the federal claim brought by Plaintiff Todd in her Complaint against Retail Concepts. Were it not for the existence of the executed Settlement Agreement, Retail Concepts could now move to dismiss Plaintiff's Complaint for failure to state a claim and succeed.

Despite this change in legal circumstances, Retail Concepts has not asked the Court to vacate the Settlement Agreement, and the company is willing to go forward with the bargain it made with Plaintiff at the time of mediation in Spring 2008. As a result of Retail Concepts' willingness to move ahead with final approval of the Settlement Agreement, each Class Member stands to gain a $15.00 discount coupon good toward the next purchase of $125.00 in merchandise at a Retail Concepts store. This is a tangible benefit Class Members will receive, even where they have experienced no injury as a result of Retail Concepts' conduct. Such a benefit would be illusive under federal FACTA law as it exists today. This remains true whether the consumer who benefits from the discount coupon hales from Texas or Tennessee, or some other affected state.

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

The Court should approve a class action settlement if, following direct notice in a reasonable manner to all class members who would be bound by the proposal and a hearing, the Court determines that the settlement "is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e); International Union, United Auto., Aerospace, and Agricultural Implement Workers of Am. v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007). Several factors guide the Court's inquiry:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

Id. It is also pertinent for the Court to consider the risk, expense and delay of further litigation. Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir. 1992); UAW v. General Motors Corp., 2006 WL 891151 at *14 (E.D. Mich. 2006). The fairness of a settlement turns to large degree on the merits of the parties' legal dispute. International Union, 497 F.3d at 631. While the Court is not required to decide the merits of the case or resolve any unsettled legal questions, the Court cannot judge the fairness of the compromise without weighing the Plaintiff's likely success on the merits against the amount and form of the relief offered in the settlement. Id. This Court enjoys wide discretion in assessing the weight and applicability of these factors. Granada Investments, Inc. 962 F.2d at 1205-1206.

The Court finds that the Settlement Agreement is fair, reasonable and adequate, and it will be approved. The most critical factor weighing in the Court's analysis is that federal law recently changed so that Class Members would be left with no benefit at all if the Court were to disapprove the Settlement Agreement. In light of the recent enactment of 15 U.S.C. § 1681n(d), Plaintiff today could not bring this lawsuit against Retail Concepts. Thus, Plaintiff and the Class Members she

8

represents could expect no likelihood of success on the merits. By approving the Settlement Agreement, the Court preserves a benefit for Class Members that was negotiated at arms length by the parties and gives effect to their compromise.

The Court finds there is no risk of fraud or collusion in this case. Plaintiff's lawsuit highlighted a serious problem in Retail Concepts' software that caused expiration numbers of credit and debit cards to be printed on receipts. As described at length in the affidavit of Valerie R. Nixon, the company's IT Director (Docket Entry No. 73), upon receiving notice of Plaintiff's lawsuit, Retail Concepts immediately took steps to correct the problems identified with its outdated software, expending substantial company resources to do so. Retail Concepts' response to the lawsuit not only brought the company into compliance with federal law, but also confirmed that each consumer would receive what Congress intended the consumer to receive: the company's use of electronic techniques to mask financial information at the point of sale or transaction in order to minimize the possibility of identity theft. There are strong and important public interests in deterring identity theft and ensuring that private companies comply with applicable federal laws.

The Court further finds that the litigation was complex and expensive and likely to continue in light of Retail Concepts' initial opposition to class certification. The company has stores in ten states, and counsel were required to consider the ramifications of a settlement affecting various states and jurisdictions. The parties engaged in sufficient discovery to frame the issues on the merits and for class certification. Without settlement, the parties would have incurred additional litigation expense.

Both sides are represented by able and experienced class counsel who hold the opinion that the Settlement Agreement should receive final approval. None of the class members have appeared

9

to challenge the Settlement Agreement. Thus, it appears that absent class members offer no resistance to its approval.

The primary objection to approval is that expressed by Mr. Graham for the State of Texas that coupon settlements are generally not a fair and effective way to settle class action litigation. See e.g., Synfuel Technologies, Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006) (vacating approval of class action settlement granting relief in the form of pre-paid Letter Express packages because they are similar to coupons, a method of compensation that has been widely criticized). The Court might agree with Mr. Graham in a different case. But here, the Settlement Agreement provides a clear financial benefit to Class Members that they would not today be entitled to receive in view of the recent change in FACTA law. The Court finds that it is in the best interest of affected consumers to approve the Settlement Agreement to ensure that consumers receive something of value, and a $15.00 credit on the next purchase of $125.00 or more is certainly not insignificant. Under the facts and circumstances of this case, the Court finds the discount coupon is fair, reasonable, and adequate compensation to consumers for Retail Concepts' alleged violation of federal law. See Palamara v. Kings Family Restaurants, 2008 WL 1818453 at * (W.D. Pa. April 22, 2008) (approving class action settlement concerning FACTA violation where restaurants agreed to provide vouchers giving consumers options for free appetizers, soup, desserts and other small menu items when visiting restaurants in future).

### III.  THE MOTION FOR ATTORNEY'S FEES AND EXPENSES

The Court finds that Plaintiff's request for attorney's fees and expenses should be granted in part and denied in part. The declaration of Charles Barrett (Docket Entry No. 65-5) establishes that class counsel and their paralegals devoted 350.95 hours to this litigation at various hourly rates,

10

to reach a total of $104,713.75 in attorney's fees. Retail Concepts did not object to the number of hours expended or the hourly rates requested because it is bound by the Settlement Agreement not to object unless the award requested or permitted exceeds $120,000.00.

In Plaintiff's Memorandum of Law in support of the motion for award of attorney's fees, Plaintiff asks the Court to apply a multiplier of 0.145981306 to the lodestar amount. The Plaintiff provides no explanation of, or support for, this unique multiplier, which would result in the payment of an additional $15,286.25 in attorney's fees. Plaintiff acknowledges that the application of a multiplier is left to the Court's sound discretion, citing <u>Baltimore v. City of Franklin</u>, 2008 WL 2437637 at *5 (M.D. Tenn. June 16, 2008).

Plaintiff has not identified any extraordinary aspect of this case that requires application of a multiplier to achieve a fully compensatory attorney's fee. It appears that Plaintiff is simply trying to reach the $120,000 ceiling for attorney's fees as provided in the Settlement Agreement at section 5.1 ("in an amount not to exceed $120,000.00"), even though Plaintiff did not actually incur such fees in litigating this case. The Court finds in its discretion that the multiplier should not be applied, and that class counsel are adequately compensated in the amount of $104,713.75 in actual attorney's fees.

Next, Plaintiff seeks litigation expenses of $7,485.50. As stated earlier in this opinion, the parties agreed in section 5.2 of the Settlement Agreement that each party would bear its own litigation costs and neither party would seek such expenses from the Court. In light of this express provision of the Settlement Agreement, the Court will not award litigation expenses to Plaintiff as requested. Accordingly, Plaintiff's motion for attorney's fees will be granted in part and denied in part as stated.

11

## IV. CONCLUSION

The Court finds that the Settlement Agreement is fair, reasonable and adequate. The Court will approve the Settlement Agreement over the objections of the Texas Attorney General. The parties will be directed to perform the terms of their agreement.

Plaintiff's motion for attorney's fees and expenses will be granted in part and denied in part. Retail Concepts will pay to Plaintiff within fifteen (15) days of the Effective Date attorney's fees in the total amount of $104,713.75, but Plaintiff's request for the addition of a multiplier to increase attorney's fees to $120,000.00 and for litigation expenses will be denied.

An appropriate Final Judgment and Order Of Dismissal With Prejudice will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE